USCA No. 22-1207

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

UNITED STATES,
Appellee

v.

BERNARDITO CARVAJAL, a/k/a Christian Mendez-Acevedo,
Defendant - Appellant

_____

ON APPEAL FROM JUDGMENT OF CONVICTION IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

**BRIEF OF APPELLANT**

_____

March 1, 2023              Eduardo Masferrer
                           First Circuit No. 98905
                           B.B.O. #644623

                           Masferrer & Associates, P.C.
                           55 Union St., 4th Floor
                           Boston, MA 02108
                           (617) 531-0135
                           Masferrer@madefenders.com


                           With him on the brief:
                           Danya F. Fullerton
                           B.B.O. #683134

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................... iii

REQUEST FOR ORAL ARGUMENT ..................................... vii

STATEMENT OF JURISDICTION ...................................... 1

ISSUES PRESENTED............................................... 2

STATEMENT OF THE CASE ......................................... 2

STATEMENT OF FACTS ............................................ 3

SUMMARY OF THE ARGUMENT ...................................... 12

ARGUMENT ..................................................... 13

I.   THE SENTENCING JUDGE ERRED IN DISREGARDING THE JURY'S
     VERDICT AND FACTUAL FINDINGS AND SENTENCING CARVAJAL
     FOR CAUSING R.T.'S DEATH, WHERE THE JUDGE BASED THIS
     ON UNRELIABLE INFORMATION REJECTED BY THE JURY, AND
     USED ACQUITTED CONDUCT TO DOUBLE CARVAJAL'S SENTENCE.
     .................................................... 13

     A. STANDARD OF REVIEW ................................. 13

     B. THE SENTENCING JUDGE ERRED IN INCREASING CARVAJAL'S
     SENTENCE BASED ON ACQUITTED CONDUCT, WHICH WAS NOT
     PROVED BY A PREPONDERANCE OF THE EVIDENCE AND NOT
     PERMITTED BY THE SENTENCING GUIDELINES ............... 13

          1. The sentencing judge erred in dramatically
          increasing Carvajal's sentence based on
          acquitted conduct, as this violates due process,
          fundamental fairness, and the principles of
          _Apprendi_, and has been roundly criticized by
          judges, scholars, and jurors. ................... 13

          2. The enhancement was improper pursuant to the
          sentencing guidelines. .......................... 23

3. The sentencing judge erred in disregarding the jury's findings and enhancing Carvajal's sentence by relying on Dr. Bird's cause of death testimony and discounting the testimony on this subject given by two medical examiners who were far more qualified to opine on this topic. ....... 26

II. THE DISTRICT COURT ABUSED ITS DISCRETION IN WITHHOLDING ANY POINTS FOR ACCEPTANCE OF RESPONSIBILITY, WHERE CARVAJAL ADMITTED TO THE CONDUCT FOR WHICH HE WAS CONVICTED AND ONLY PROCEEDED TO TRIAL TO CHALLENGE THE ALLEGATION THAT HE HAD CAUSED R.T.'S DEATH – CONDUCT OF WHICH HE WAS ACQUITTED. ......................................... 30

A. STANDARD OF REVIEW ................................ 30

B. CARVAJAL ACCEPTED RESPONSIBILITY BY TRUTHFULLY ADMITTING THE CONDUCT COMPRISING HIS CONVICTIONS. ..... 30

CONCLUSION .................................................. 32

CERTIFICATE OF COMPLIANCE .................................... 33

CERTIFICATE OF SERVICE ....................................... 34

ADDENDUM ..................................................... 35

# TABLE OF AUTHORITIES

## Cases

Alleyne v. United States,
  133 S.Ct. 2151 (2013) ............................... 19, 20, 21

Apprendi v. New Jersey,
  530 U.S. 466 (2000) ..................................... 19, 21

Burrage v. United States,
  571 U.S. 204 (2014) ......................................... 29

Damon v. Sun Co., Inc.,
  87 F.3d 1467 (1st Cir. 1996) ................................ 27

Gall v. United States,
  552 U.S. 38 (2007) .......................................... 21

In re Winship,
  397 U.S. 358 (1970) ......................................... 18

Jones v. United States,
  574 U.S. 948 (2014) ..................................... 16, 23

McMillan v. Pennsylvania,
  477 U.S. 79 (1986) .......................................... 15

Molina-Martinez v. United States,
  578 U.S. 189 (2016) ......................................... 32

Picciotto v. Cont'l Cas. Co.,
  512 F.3d 9 (1st Cir. 2008) .................................. 26

Smilow v. Southwestern Bell Mobile Sys., Inc.,
  323 F.3d 32 (1st Cir. 2003) ................................. 26

United States v. Alejandro-Montanez,
  778 F.3d 352 (1st Cir. 2015) ................................ 15

United States v. Bell,
  808 F.3d 926 (D.C. Cir. 2015) ....................... 14, 17, 18

United States v. Bramley,
  847 F.3d 1 (1st Cir. 2017) .................................. 26

iii

United States v. Cameron,
  No. 1:09-CR-00024-JAW, 2014 WL 5323396
  (D. Me. Oct. 17, 2014) ...................................... 14

United States v. Canania,
  532 F.3d 764 (8th Cir. 2008) ............................... 17

United States v. Cash,
  266 F.3d 42 (1st Cir. 2001) ................................ 31

United States v. Curran,
  926 F.2d 59 (1st Cir. 1991) ................................ 26

United States v. Delacruz,
  862 F.3d 163 (2d Cir. 2017) ................................ 31

United States v. Diaz,
  285 F.3d 92 (1st Cir. 2002) ................................ 25

United States v. Faust,
  456 F.3d 1342 (11th Cir. 2006) ............................. 18

United States v. Garrasteguy,
  559 F.3d 34 (1st Cir. 2009) ................................ 31

United States v. Heindenstrom,
  946 F.3d 57 (1st Cir. 2019) ............................ 22, 29

United States v. Lombard,
  72 F.3d 170 (1st Cir. 1995) ............................ 14, 15

United States v. Melendez-Gonzalez,
  892 F.3d 9 (1st Cir. 2018) ................................. 14

United States v. Mousseau,
  517 F.3d 1044 (8th Cir. 2008) .............................. 25

United States v. Ofray-Campos,
  534 F.3d 1 (1st Cir. 2008) ............................. 21, 22

United States v. Oliveras,
  905 F.2d 623 (2d Cir. 1990) ................................ 31

United States v. Oquendo-Rivera,
  586 F.3d 63 (1st Cir. 2009) ................................ 27

United States v. Perry,
  49 F.4th 33 (1st Cir. 2022) .................................. 30

United States v. Pimental,
  367 F. Supp. 2d 143 (D. Mass. 2005) ......................... 17

United States v. Rivera-Gomez,
  67 F.3d. 993 (1st Cir. 1995) ................................ 14

United States v. Ruiz-Huertas,
  792 F.3d 223 (1st Cir. 2015) ................................ 13

United States v. Sabillon-Umana,
  772 F.3d 1328 (10th Cir. 2014) .............................. 16

United States v. Singh,
  877 F.3d 107 (2d Cir. 2017) ................................. 21

United States v. Zolot,
  968 F. Supp. 2d 411 (D. Mass. 2013) ......................... 28

**Statutory Provisions**

18 U.S.C. § 3231 .............................................. 1

18 U.S.C. § 3553 .......................................... 22, 23

21 U.S.C. § 841(a)(1) ...................................... 1, 2

21 U.S.C. § 841(b)(1)(A) ..................................... 24

21 U.S.C. § 841(b)(1)(C) ................................... 2, 24

21 U.S.C. § 841(b)(1)(E) ..................................... 24

21 U.S.C. § 960(b)(1) ....................................... 24

21 U.S.C. § 960(b)(2) ....................................... 24

21 U.S.C. § 960(b)(3) ....................................... 24

21 U.S.C. § 960(b)(5) ....................................... 24

28 U.S.C. § 1291 ............................................. 1

v

## Rules

Fed. R. App. P. 34(a) .........................................vii

Local Rule 34(a) .............................................vii

## Other Authorities

Justin D. Levinson & Danielle Young, <u>Implicit Gender Bias in the</u>
  <u>Legal Profession: An Empirical Study</u>,
  18 Duke J. Gender L. & Pol'y 1 (2010) ...................... 28

May 16, 2008 Letter from Juror # 6 to The Honorable Richard W.
  Roberts, available at: <u>http://video1.washingtontimes.com/</u>
  video/docs/letter.pdf ...................................... 17

U.S.S.G. §1B1.3.............................................. 24

U.S.S.G. §2D1.1.............................................. 24

U.S.S.G. §3E1.1.............................................. 30

U.S.S.G. §3E1.1, comment 1................................... 31

U.S.S.G. §5K2.0....................................... 23, 24, 29

U.S.S.G. §5K2.1........................................... 23, 25

## REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. App P. 34(a) and Local Rule 34(a), Appellant Bernardito Carvajal ("Carvajal") respectfully requests oral argument in this appeal, which involves important constitutional issues regarding fairness and due process in sentencing, which are likely to recur.

**STATEMENT OF JURISDICTION**

This is a direct appeal of the conviction imposed in connection with a criminal judgment entered by the United States District Court for the District of Massachusetts following a jury trial. The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. On November 22, 2022, a jury found Mr. Carvajal guilty of distribution of and possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) on two occasions. R.A.934-35.[1] The jury found Carvajal did not distribute of cocaine or cause the death of R.T. R.A.934-35.

On March 16, 2022, the district court held a sentencing hearing and sentenced Mr. Carvajal to 120 months in prison and three years of supervised release. R.A.16-17. Judgment was entered on March 17, 2022. R.A.17. On March 22, 2022, Carvajal filed a timely notice of appeal. R.A.17, 1047.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] The Record Appendix is cited herein as "R.A.[page]." The addendum is cited as "Add.[page]."

## ISSUES PRESENTED

I.  Did the District Court err in disregarding the jury's verdict and factual findings by (1) discounting the testimony of two medical examiner witnesses regarding cause of death, who the jury apparently credited, and (2) disregarding the jury's verdict acquitting the defendant of causing the decedent's death and using facts the jury rejected to justify a dramatic increase in Carvajal's sentence, resulting in an unreasonable sentence?

II. Did the District Court err in refusing to award Carvajal two points for acceptance of responsibility, where he admitted to the conduct that formed the basis of his convictions and had no alternative but to proceed to trial to contest the conduct for which he was acquitted?

## STATEMENT OF THE CASE

On January 29, 2020, a federal grand jury returned an indictment charging Carvajal with (1) distribution of fentanyl and cocaine resulting in death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) distribution of and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1). R.A.19-20.

A jury trial was held from November 17 to November 22, 2021 (O'Toole, J., presiding). R.A.14-15.

On March 16, 2022, the district court held a sentencing hearing, then sentenced Mr. Carvajal to 120 months in prison and three years of supervised release. R.A.17. Carvajal filed a timely notice of appeal on March 22, 2022. R.A.17, 1047.

## STATEMENT OF FACTS

This appeal concerns serious errors arising from the District Court's approval of unreliable expert testimony without first conducting a <u>Daubert</u> hearing, then relying in part on that unreliable testimony to override the jury's verdict and unfairly enhance Carvajal's sentence based on explicitly acquitted conduct.

### I.   The Death & Subsequent Investigation

On June 13, 2019, police responded to an Andover, Massachusetts, home at around 9 p.m. for a reported possible overdose. R.A.143-144 (Tr. 2:33-34). Officer Lamagna saw R.T.[2] laying on a bed with an uncapped needle next to his arm. R.A.146-147 (Tr. 2:36-37). First responders administered Narcan and performed CPR. R.A.149 (Tr. 2:39). Police removed the needle from the scene and discarded it at the police station without testing the substance that Lamagna saw inside it. R.A.154, 157 (Tr. 2:44, 47). R.T. was taken to the hospital where further attempts to revive him failed. R.A.261 (Tr. 2:151).

---

[2] The decedent is referred to by his initials, as was done in the District Court, to protect his privacy.

Agents obtained R.T.'s phone and discovered what they believed to be drug-related Facebook messages between R.T. and Carvajal. R.A.304-305, 308 (Tr. 2:194-95, 198). Some of these messages referred to "white," which Agent Coletti stated in his sworn affidavit is slang for fentanyl. R.A.422 (Tr. 3:97). However, at trial, he claimed that it is slang for cocaine. R.A.305-06, 308-10 (Tr. 2:195-96, 198-200).

There were also text messages and calls between R.T. and Carvajal in early June 2019 regarding what agents believed to be drug transactions.[3] R.A.311, 313-15, 317-20 (Tr. 2:201, 2:203-05, 2:207-10). The conversation continued on June 10, 2019, with R.T. requesting "a ball" or "3.5". R.A.348 (Tr. 3:23). On June 11, 2019, R.T. requested "2 more," then in the evening, "another."[4] R.A.349, 361 (Tr. 3:24, 36). Later that night, R.T. asked for "one more for delivery." R.A.351 (Tr. 3:26).

On June 12, 2019, R.T. asked for 3.5 and for "one brown".[5] R.A.352-53 (Tr. 3:27-28). Based on the text messages, agents opined

---

[3] Cell tower location information from R.T.'s and Carvajal's phones indicated that on June 4, June 9, June 11, and June 12, 2019, the two phones were in the same general area. R.A.512-15 (Tr. 3:187-190).

[4] In many of these messages, "white" or "brown" is not specified, just quantities.

[5] At different points in their testimony agents opined that "white" could refer to fentanyl or cocaine; at other times they indicated that "brown" could refer to heroin or fentanyl. Agents recovered messages from Carvajal's phone with other individuals referring to "brown" and "white." R.A.378 (Tr. 3:53).

that R.T. and Carvajal met in Lawrence for R.T. to purchase cocaine and fentanyl. R.A.356 (Tr. 3:31).

Agents learned that R.T. had texted his friend, Miles Brown, on June 9 seeking "yayo," which is slang for cocaine. R.A.369-70, 395-96, 426 (Tr. 3:44-45, 70-71, 101). Brown replied, "I'm not sure on that one, man." R.A.370 (Tr. 3:45). R.T. and Brown also worked together, and so were able to speak in person, and they had several phone calls on June 11 and 12. R.A.398, 401 (Tr. 3:73, 76).

The last outgoing communication from R.T.'s phone was on June 13, 2019, at 2:01 a.m.; it was a message to his girlfriend. R.A.359 (Tr. 3:34).

Drug Enforcement agents arrested Carvajal on July 31, 2019, as a result of a buy-bust operation. R.A.285 (Tr. 2:175). An undercover agent, Michel Lane, set up a drug transaction by contacting a phone number provided by an Andover Police detective, who had gotten it during the investigation into R.T.'s death. R.A.286-87, 521 (Tr. 2:176-77, 3:196). Detective Michael Lane, the undercover agent, testified that "white" could mean either cocaine or fentanyl, and that he intended to buy fentanyl using that term. R.A.523, 531 (Tr. 3:198, 206). Agent Coletti testified he believed that the requested 14 grams of "white" to be cocaine. R.A.287 (Tr. 2:177). The deal was arranged to take place at a B.J.'s Wholesale

Club, and Carvajal[6] was arrested after it occurred. R.A.289-90 (Tr. 2:179-80). The drugs purchased were fentanyl, not cocaine or fentanyl mixed with cocaine. R.A.298, 390 (Tr. 2:188; Tr. 3:65). The substance purchased was less than 1% pure fentanyl; the remainder was caffeine and other dilutants. R.A.558 (Tr. 4:24).

## II.  Trial and Cause of Death Testimony

At trial, the defense asserted that Carvajal had sold fentanyl, but not cocaine, to R.T., who likely obtained cocaine from Miles Brown. The defense further asserted the evidence from the incomplete postmortem examination of R.T. did not establish that "but for" R.T.'s ingestion of fentanyl, he would have died. R.T. was a longtime drug user who had several medical incidents and conditions leading up to his death. R.A.202, 212-13 (Tr. 2:92, 102-03). R.T. had long-standing heartburn and stomach issues. R.A.249-50 (Tr. 2:139-40). He was diagnosed with having a gastric ulcer in 2014, and he had been in the hospital for this condition a few times. R.A.265 (Tr. 2:155).

In 2016, he went to the hospital because his arm was infected from intravenous drug use. R.A.212 (Tr. 2:102). On the evening of January 23, 2019, R.T.'s girlfriend found him on the bathroom floor,

---

[6] Carvajal had a driver's license on him in the name of Christian Jose Mendez-Acevedo. R.A.293 (Tr. 2:183). People who are in the United States without legal documentation cannot obtain a driver's license. R.A.403 (Tr. 3:78). R.T. and his girlfriend knew Carvajal by his true name. R.A.404, 406-07 (Tr. 3:79, 81-82).

bleeding from his face, with needles nearby. R.A.180 (Tr. 2:70). His girlfriend took him to the hospital. R.A.213 (Tr. 2:103). A blood screen was done and indicated he had fentanyl in his system.[7] R.A.390 (Tr. 3:65).

In March 2019, R.T. again went to the hospital, and was there overnight. R.A.221-22 (Tr. 2:111-12). He told his girlfriend the hospital staff said he had cyclic vomiting from smoking marijuana. R.A.222 (Tr. 2:112).

R.T. had hepatitis C and low lying cerebellar tonsils, which is an abnormality with R.T.'s brain. R.A.596, 606 (Tr. 4:62, 72).

In the days leading up to his death, R.T. complained to his girlfriend, who was on an overseas trip, about a toothache. R.A.250 (Tr. 2:140). He was in a lot of pain. R.A.270 (Tr. 2:160).

The medical examiner, Dr. Maria Del Mar Capo-Martinez did a post-mortem examination of the outside of R.T.'s body, noting "track marks" on his arm indicating IV drug use. R.A.440-44 (Tr. 3:115-119). She collected fluid and blood from R.T.'s body, and reviewed the police report and hospital records.[8] R.A.446 (Tr.

---

[7] Facebook messages from that day between R.T. and Carvajal indicate a sale of "white" that day. R.A.393 (Tr. 3:68).
[8] The medical examiner's office did not receive all of R.T.'s hospital records; records from several hospital visits, including his January 2019 hospital stay, were not received or reviewed. R.A.482 (Tr. 3:157). Dr. Capo-Martinez was unaware that she had not received all of R.T.'s medical records. R.A.492 (Tr. 3:167).

3:121). Testing revealed that R.T.'s urine was positive for cocaine and fentanyl. R.A.450 (Tr. 3:125).

Dr. Capo-Martinez did not perform an autopsy, despite the National Association of Medical Examiners' recommendation that an autopsy be conducted in cases of suspected overdose deaths. R.A.451, 462 (Tr. 3:126, 137). Dr. Capo-Martinez testified that she was aware of a study finding that, in 60 cases where medical examiners determined that death was due to overdose based solely on external examination and toxicology findings (as here), after an autopsy was performed, the initial determination was subject to an error rate of approximately 20 percent. R.A.463-64 (Tr. 3:138-139).

Dr. Capo-Martinez concluded that R.T. died from "acute intoxication due to the combined effects of fentanyl and cocaine." R.A.447 (Tr. 3:122). She was unable to determine whether fentanyl or cocaine individually could have killed R.T., which is why the cause of death lists combined intoxication – she believed the death was caused by a combination of both drugs.[9] R.A.456-57, 459 (Tr. 3:131-32, 134). The amount of fentanyl in R.T.'s body was "on the higher side[,]" but Dr. Capo-Martinez had seen people who had died due to reasons not related to overdose with similar or higher levels. R.A.470 (Tr. 3:145). Because no autopsy was performed, Dr. Capo-Martinez was not able to rule out other causes of death

---

[9] Carvajal was acquitted of selling cocaine. R.A.933.

8

including a heart attack, blood clot, stroke or seizure, endocarditis, a ruptured ulcer, or a blood infection. R.A.482-84, 490 (Tr. 3:157-59, 165).

Dr. Steven Bird, an emergency physician and medical toxicologist[10] who is not a medical examiner or trained pathologist, opined on R.T.'s cause of death after reviewing the medical records, law enforcement reports, and the medical examiner's file. R.A.578, 583 (Tr. 4:44, 49). He was permitted to testify over Carvajal's Daubert objection and without a Daubert hearing, as the Court declined to conduct one.[11] R.A.23-30; Add. 1. He testified that R.T. died as a result of a fentanyl overdose, though he acknowledged that the combination of fentanyl with cocaine is "potentially lethal." R.A.584, 614 (Tr. 4:50, 80). He further testified that certain causes of death cannot be ruled out with only an external examination; blood clot, stroke, seizures, heart attack dur to endocarditis. R.A.625-27 (Tr. 4:91-93). He reluctantly conceded that, like Dr. Capo-Martinez, he could not rule out other causes of death. See R.A. 634-35 (Tr. 4:100-101).

Dr. Elizabeth Laposata, a medical doctor and forensic pathologist, and the former Chief Medical Examiner for Rhode Island

---

[10] Dr. Bird is not board-certified in forensic toxicology. R.A.621 (Tr. 4:87).
[11] The Court's refusal to conduct a Daubert hearing, allowing Dr. Bird's testimony without performing the Court's gatekeeping function, infected the Court's role at sentencing.

testified. R.A.669-70 (Tr. 4:135-36). Her opinion on R.T.'s cause of death was that it was undetermined. R.A.695 (Tr. 4:161). She testified that an autopsy should be performed in suspected overdose cases to determine the cause of death. R.A.686-87 (Tr. 4:152-53). There are many natural causes of death that cannot be determined without an autopsy, including pneumonia, heart disease, brain hemorrhage, or a systemic infection. R.A.689 (Tr. 4:155). Dr. Laposata opined, based on R.T.'s medical history, that he could have had an infection in his body that caused his death, as he had been complaining of pain in his teeth and head, and because intravenous drug users are at risk for diseases and infections due to use of unsterile needles. R.A.690-91 (Tr. 4:156-57). He was also at risk of a ruptured ulcer, as he had a history of a duodenal ulcer and was having abdominal pain. R.A.691 (Tr. 4:157). In addition, the level of fentanyl in R.T.'s system was not a per se lethal amount, and the way that the blood sample was collected and due to postmortem distribution,[12] the level may not have accurately reflected the amount of fentanyl in R.T.'s blood vessels. R.A.692-94 (Tr. 4:158-60).

---

[12] Postmortem redistribution is an artifact that occurs after death, where drug levels in the bloodstream and organs diffuse through the body, causing test results that vary from the level of the drug that was in the bloodstream during life. R.A.694 (Tr. 4:160).

### III. Verdicts & Sentencing

The jury unanimously found that Carvajal distributed fentanyl, but not cocaine. R.A.933. The jury only convicted Carvajal of distribution of fentanyl and the jurors also specifically did not find that R.T.'s death resulted from the use of one or more of the substances distributed by Carvajal. R.A.933-934.

Carvajal's criminal history was determined to be a category I. Carvajal requested the two-level credit for acceptance of responsibility, which the sentencing judge denied. R.A.1005-07 (Sent. Tr. 12-14). Had these points been granted, Carvajal's adjusted offense level would have been 22, and his guideline sentencing range would have been 41 to 51 months. Instead, the Court set his adjusted offense level at 24, indicating that Carvajal's guideline sentencing range was 51 to 63 months. R.A.1007 (Sent. Tr. 14). However, the judge then dramatically increased the sentence pursuant to §5K2.1, which allows for a sentence above the authorized guideline range in cases where "death resulted." R.A.1043 (Sent. Tr. 50). Carvajal was sentenced to 120 months, R.A.1043 (Sent. Tr. 50), nearly triple the properly calculated range, and almost double the highest end of the guideline sentence the trial judge had calculated.

The sentencing judge erred in sentencing Carvajal to nearly double the high end of his guidelines sentencing range on the basis of acquitted conduct. First, though the law of this circuit presently permits the sentencing judge, in his or her discretion, to use acquitted conduct proved by a preponderance of the evidence in sentencing, this sentence exceeded constitutional limits. In addition, this sentencing practice has been maligned by judges, scholars, and jurors as unfair, unconstitutional, and undermining the jury system. The resulting sentence was unreasonable. (infra at pp. 13 – 23).

This variance was improper according to the guidelines. (infra at pp. 23 – 25).

In addition, the conduct relied upon for the dramatic upward variance was not sufficiently proved, and the judge abused his discretion in crediting unreliable testimony that the jury had disbelieved in making his finding. (infra at pp. 26 – 30).

The sentencing judge also abused his discretion in refusing to grant Carvajal a two-point reduction for acceptance of responsibility. Carvajal admitted to the conduct that formed the basis of his convictions and disputed only the conduct for which he was acquitted. As he had no alternative but to proceed to trial,

it is unfair to withhold two points for acceptance of responsibility under these circumstances. (<u>infra</u> at pp. 30 – 32).

<u>ARGUMENT</u>

I. **THE SENTENCING JUDGE ERRED IN DISREGARDING THE JURY'S VERDICT AND FACTUAL FINDINGS AND SENTENCING CARVAJAL FOR CAUSING R.T.'S DEATH, WHERE THE JUDGE BASED THIS ON UNRELIABLE INFORMATION REJECTED BY THE JURY, AND USED ACQUITTED CONDUCT TO DOUBLE CARVAJAL'S SENTENCE.**

    **A. STANDARD OF REVIEW**

This Court reviews the procedural reasonableness of a sentence affording "de novo review to the sentencing court's interpretation and application of the sentencing guidelines," reviews the findings of fact for clear error, and the court's "judgment calls" for abuse of discretion. <u>United States v. Ruiz-Huertas</u>, 792 F.3d 223, 226 (1st Cir. 2015). The substantive reasonableness of a sentence is reviewed for abuse of discretion, considering the totality of the circumstances. <u>Id</u>.

    **B. THE SENTENCING JUDGE ERRED IN INCREASING CARVAJAL'S SENTENCE BASED ON ACQUITTED CONDUCT, WHICH WAS NOT PROVED BY A PREPONDERANCE OF THE EVIDENCE AND NOT PERMITTED BY THE SENTENCING GUIDELINES.**

    **1. The sentencing judge erred in dramatically increasing Carvajal's sentence based on acquitted conduct, as this violates due process, fundamental fairness, and the principles of <u>Apprendi</u>, and has been roundly criticized by judges, scholars and jurors.**

Though the law of this circuit presently permits the sentencing judge, in his or her discretion,[13] to use acquitted conduct proved by a preponderance of the evidence in sentencing, United States v. Melendez-Gonzalez, 892 F.3d 9, 19 (1st Cir. 2018), there are constitutional limits to the use of sentencing enhancements:

> [T]he burgeoning use of sentence enhancers by Congress and the Sentencing Commission as part of the catechism of punishment poses an obvious danger that, in extreme circumstances, the lagniappe might begin to overwhelm the main course. In all probability, there are constitutional limits on the way sentencing factors can be deployed in the punishment of a substantive offense.

United States v. Rivera-Gomez, 67 F.3d. 993, 1001 (1st Cir. 1995). The First Circuit has continued to warn of the risk of punishing defendants for enhancements and not the offense of conviction. United States v. Lombard, 72 F.3d 170 (1st Cir. 1995). In Lombard,

---

[13] This is certainly not required. See United States v. Cameron, No. 1:09-CR-00024-JAW, 2014 WL 5323396, at *8 (D. Me. Oct. 17, 2014), aff'd, 835 F.3d 46 (1st Cir. 2016) (refusing to consider vacated conduct in resentencing; the "First Circuit hinted that this Court's consideration of the images underlying the acquitted conduct should not be a foregone conclusion . . . [the Court] was certainly aware of Watts and its own precedent on a sentencing court's right to consider acquitted conduct and-consistent with that precedent-if it was sure that this Court would count the images from acquitted conduct, there would have been no need for the First Circuit to remand to this Court to reconsider the number of images attributable to Mr. Cameron"). See also United States v. Bell, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in denial of rehearing en banc) ("federal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct").

the First Circuit remanded the case to the trial court to review its use of a murder to enhance a gun possession charge for which Lombard was acquitted in the state court. The Court noted that the life sentence imposed by the Court was punishment for the enhancement and not for the offense for which he had been convicted. The Court noted that that this was an example of the "tail which wags the dog of the substantive offense." Id. at 176-177, citing McMillan v. Pennsylvania, 477 U.S. 79, 88 (1986). Similarly, in this case, Carvajal's ten year sentence is almost double the high end of the calculated guideline sentence[14] and punished him for the enhancement, not the offense. This has exceeded the "constitutional limits" permissible, as Carvajal was punished for the enhancement (conduct for which he was acquitted), instead of for his conviction.

Judges and jurors have continued to criticize the use of acquitted conduct in sentencing as constitutionally suspect and unfair. E.g., United States v. Alejandro-Montanez, 778 F.3d 352, 362-63 (1st Cir. 2015) (Torruella, J., concurring) ("it is inappropriate and constitutionally suspect to enhance a defendant's sentence based on conduct that the defendant was

---

[14] Had the sentencing judge properly reduced the offense level for acceptance of responsibility, see section II, below, the sentence imposed would even more dramatically exceed the guideline sentencing range.

either (in the case of Severino) not charged with or (in the case of the Alejandro brothers) acquitted of"); <u>United States v. Sabillon-Umana</u>, 772 F.3d 1328, 1331 (10th Cir. 2014) ("[i]t is far from certain whether the Constitution allows" "a district judge [to] . . . increase a defendant's sentence . . . based on facts the judge finds without the aid of a jury or the defendant's consent") (citing <u>Jones v. United States</u>, 574 U.S. 948 (2014) (Scalia, J., dissenting from denial of certiorari)).

The <u>Ball</u>/<u>Jones</u> case presents a key example. <u>Jones v. United States</u>, 574 U.S. 948 (2014). In <u>Jones</u>, the defendants were convicted of distributing small amounts of drugs and acquitted of conspiring to distribute drugs, but the sentence relied on the acquitted conspiracy. <u>Id</u>. (Scalia, J., dissenting from denial of certiorari). Justices Scalia, Thomas, and Ginsburg urged that the Supreme Court should accept the case for review "to put an end to the unbroken string of cases disregarding the Sixth Amendment," as "[t]his has gone on long enough." <u>Id</u>.

When the prosecution requested the enhanced sentence in the <u>Ball</u>/<u>Jones</u> case, a juror wrote a letter to the sentencing judge, stating

> It seems to me a tragedy that one is asked to serve on a jury, serves, but then finds their work may not be given the credit it deserves. We, the jury, all took our charge seriously. . . . Eventually, through every hour-long tape of a single drug sale, hundreds of pages of

> transcripts, ballistics evidence, and photos, we
> delivered to you our verdicts.
>
> What does it say to our contribution as jurors when we
> see our verdicts, in my personal view, not given their
> proper weight. It appears to me that these defendants
> are being sentenced not on the charges for which they
> have been found guilty but on the charges for which the
> District Attorney's office would have liked them to have
> been found guilty.

United States v. Canania, 532 F.3d 764, 778 n.4 (8th Cir. 2008)

(Bright, J. concurring), quoting May 16, 2008 Letter from Juror #

6 to The Honorable Richard W. Roberts, available at:

http://video1.washingtontimes.com/video/docs/letter.pdf.

In fact, many judges have expressed concern that the use of

acquitted conduct undermines the jury system and the defendant's

Sixth Amendment rights. See id. at 776-77 (Bright, J., concurring)

and cases cited. "[A]llowing judges to materially increase the

length of imprisonment based on facts that were *submitted directly

to and rejected by* the jury in the same criminal case is too deep

of an incursion into the jury's constitutional role." United States

v. Bell, 808 F.3d 926, 930 (D.C. Cir. 2015) (Millett, J.,

concurring in the denial of rehearing en banc) (emphasis in

original). "To tout the importance of the jury in deciding facts,

even traditional sentencing facts, and then to ignore the fruits

of its efforts makes no sense-as a matter of law or logic." United

States v. Pimental, 367 F. Supp. 2d 143, 153 (D. Mass. 2005).

Using acquitted conduct to otherwise enhance a defendant's sentence also implicates the Due Process Clause.

> When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law—that is, when an enhancement factor could have been named in the indictment as a complete criminal charge—the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt.

United States v. Faust, 456 F.3d 1342, 1352 (11th Cir. 2006) (Barkett, J., concurring). "[S]entencing on the basis of acquitted conduct not only violates the Due Process Clause's specific guarantee of proof beyond a reasonable doubt, but also other aspects of 'the requirement of fundamental fairness' embodied in the constitutional right to due process of law." Id., quoting In re Winship, 397 U.S. 358, 369 (1970) (Harlan, J., concurring).

Lastly, to impose a sentence that punishes Carvajal for either (1) distribution of a substance the jury indicated they did not believe he sold, or (2) for finding that he caused the death of R.T. when the jury specifically found that the government had failed to prove its case, would render the jury system meaningless. It would result in a "heads I win, tails you lose" scenario where the constitutional right to a fair trial is hollow because, regardless of the jury's verdict, the defendant will be punished for what the government asserts is his offense. Cf. Bell, 808 F.3d at 932 (Millett, J., concurring in the denial of rehearing en banc)

("the Constitution generally affords the prosecution one shot at convicting a defendant of charged conduct. But counting acquitted conduct at sentencing gives the government a second bite at the apple.").

In Apprendi, the Court found that a fact that increases the maximum punishment must be found to be established beyond a reasonable doubt or supported by the jury's verdict. Apprendi v. New Jersey, 530 U.S. 466 (2000). The Supreme Court, in Alleyne, found that facts that increase the mandatory minimum sentence must be proven to the jury. Alleyne v. United States, 133 S.Ct. 2151 (2013). Here, the government requested a jury verdict form that asked the jury to make specific factual findings. The Court used the government's proposed verdict form and had the jurors determine (1) which type of drug Carvajal was guilty of selling to R.T., and (2) whether that type of drug caused his death. In doing so, the Court was able to discern which facts the jury accepted in making its determination, and which it rejected.

The jurors rejected a finding that Carvajal sold cocaine to R.T. and rejected the government's expert's opinion that the fentanyl, which Carvajal was convicted of providing, resulted in R.T.'s death. Notwithstanding these findings, the Court used R.T.'s death as a sentencing factor to increase the punishment to more than double that recommended by the sentencing guidelines,

without taking into account Carvajal's acceptance of responsibility. In Alleyne, the Supreme Court made it clear that "[f]acts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 108. The Court noted that while a higher sentence can be imposed based on the offense of conviction, the court specifically found this to be unpersuasive: "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact." Id. at 114-15.

The Court adopted a fact that was not proven to a jury and is not a traditional sentencing fact in that it does not concern "the manner in which the offender committed the crime, [which is] typically for the judge to determine." Alleyne, 570 U.S. at 122 (Breyer, J., concurring). Rather the Court found that Carvajal should be held accountable for something that is not "the manner in which the offender committed the crime", id., but the government's theory of the *result* of his crime which was soundly rejected by the jury. It is in this vein that the Court, and Justice Breyer, citing Justice Story, finds that these types of

facts need to be proven to a jury, as it is what protects defendants from overzealous prosecutors and judges.

> The early historical references that this Court's opinions have set forth in favor of Apprendi refer to *offense elements,* not to *sentencing facts*. Thus, when Justice Story wrote that the Sixth Amendment's guarantee of trial by jury offered ' "securit[y] against the prejudices of judges, . . . he was likely referring to elements of a crime; and the best answer to Justice SCALIA's implicit question in Apprendi—what, exactly, does the "right to trial by jury" guarantee?—is that it guarantees a jury's determination of facts that constitute the elements of a crime.

Alleyne, 570 U.S. at 122-23 (Breyer, J., concurring) (internal citations omitted).

This sentence, based primarily on acquitted conduct, even though it falls within the statutory maximum, is nonetheless substantively unreasonable. Cf. United States v. Singh, 877 F.3d 107, 116-17 (2d Cir. 2017) (sentence that was three to four times the Guidelines range was substantively unreasonable). Where a sentence far exceeds the recommended guidelines range, the court "must offer an especially compelling reason for its sentence." United States v. Ofray-Campos, 534 F.3d 1, 43 (1st Cir. 2008). Such a sentence is not presumed to be reasonable. See Gall v. United States, 552 U.S. 38, 51 (2007).

The judge based the sentence on the purposes of (1) deterrence for Mr. Carvajal and others who sell drugs, and (2) the death of

R.T. R.A.1042-43 (Sent. Tr. 49-50). These factors do not support such a wide variance from the guidelines range.

The deterrence factor is already baked into the guidelines, and the need for deterrence does not distinguish this case from any other drug-selling case. Cf. Ofray-Campos, 534 F.3d at 43. When R.T.'s tragic death, even if it could be deemed related to Carvajal's offense, is factored into the sentence, it is still unreasonably high. In United States v. Heindenstrom, this Court found a sentence of 60 months was reasonable for selling fentanyl that caused a death. Heindenstrom, 946 F.3d 57, 65-66 (1st Cir. 2019). Carvajal received a sentence that was twice as long for less culpable conduct; Heindenstrom was selling heroin he knew had been spiked with fentanyl, which was much more likely to lead to overdose than Carvajal's selling particularly weak fentanyl.

Carvajal's sentence is twice that which this Court found reasonable on similar facts in Heindenstrom. Such a large departure from the Guidelines range for acquitted and unproven conduct is not a reasonable sentence and does not comply with the dictates of § 3553(a) to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing or "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a).

The court's reliance on acquitted conduct only further demonstrates the sentence's unreasonableness. Cf. <u>Jones</u>, 574 U.S. 948 (Scalia, J., dissenting from denial of certiorari) ("any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by a judge.") (emphasis in original).

## 2. The enhancement was improper pursuant to the sentencing guidelines.

The upward departure, pursuant to U.S.S.G. §5K2.1, was not authorized under the Sentencing Guidelines under §5K2.0. Under §5K2.0:

> (a) Upward Departures in General and Downward Departures in Criminal Cases Other Than Child Crimes and Sexual Offenses.—
>
> (1) IN GENERAL.—The sentencing court may depart from the applicable guideline range if—
>
> (A) in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance; or
>
> (B) in the case of child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), that there exists an aggravating circumstance,
>
> of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

The Sentencing Commission specifically took into account the circumstances in which the distribution of drugs results in a death. U.S.S.G. §2D1.1 references increased guideline penalties for individuals convicted under 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(C), 21 U.S.C. §§ 960(b)(1), (b)(2), or (b)(3), 21 U.S.C. § 841(b)(1)(E) or 21 U.S.C. § 960(b)(5). Carvajal was charged and acquitted of 21 U.S.C. § 841(b)(1)(C). This circumstance was specifically considered by the Sentencing Commission, which determined that an increased penalty was appropriate in circumstances that are simply not present in this case.

The Court must also evaluate whether the Chapter Two guidelines already reflect the risk of personal injury. U.S.S.G. §2D1.1 provides a higher sentence for the sale of fentanyl than heroin, cocaine or other controlled substances precisely for this reason. Thus, the guideline has already taken the risks of fentanyl into account, and no departure is warranted.

A departure under U.S.S.G. § 5K2.1 relates to U.S.S.G. §1B1.3 in which relevant conduct may be used to depart from the recommended guideline sentence.[15] There must be conduct - behavior-by the defendant that connects the death to the convicted offense. The application note requires that the trial court assess the

_____

[15] U.S.S.G. §1B1.3 (1)(A) includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.

defendant's state of mind and the degree of planning or preparation, whether multiple deaths occurred, the means by which life was taken and whether the death was intended or knowingly risked. Here, as the court acknowledged, Carvajal did not plan or intend for R.T.'s death. R.T. had been an intravenous heroin user off and on since he was at least 16, according to his medical reports. He had also used fentanyl previously and Carvajal had no knowledge of any negative reactions, especially since R.T. reached out to him for more.

Many cases where an upward departure was applied pursuant to U.S.S.G. §5K2.1 involve conduct - affirmative activity which is outside of the conduct of the offense and which were considered dangerous actions. For instance, in <u>United States v. Diaz</u>, 285 F.3d 92 (1st Cir. 2002), Diaz, a drug dealer, cocked a small pistol. A plain clothed officer responded by removing his gun and pointing it at Diaz. Other officers observed this interchange but did not know the identity of the officer, and shot and killed him. Although Diaz did not kill the officer, the cocking of the gun was the conduct that initiated the chain of events that led to the death of the officer. Or, in <u>United States v. Mousseau</u>, 517 F.3d 1044 (8th Cir. 2008), the defendant did more than simply sell drugs, she gave them to a minor. No such factor is found here in Carvajal's actions, intent, or criminal history.

**3.** **The sentencing judge erred in disregarding the jury's findings and enhancing Carvajal's sentence by relying on Dr. Bird's cause of death testimony and discounting the testimony on this subject given by two medical examiners who were far more qualified to opine on this topic.**

Due process requires, "at a minimum, that 'a defendant . . . be sentenced upon information which is not false or materially incorrect." United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017), quoting United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991). Despite the jury's unanimous finding that R.T.'s death did not result from the use of one or more of the substances distributed by the defendant, the sentencing judge found that death resulted from Carvajal's conduct.

In making this finding, the judge explained that he relied most on Dr. Bird's opinion. R.A.1038 (Sent. Tr. 45). He explained that Dr. Laposata, the defense expert, was "not very helpful," and Dr. Capo-Martinez "was helpful but cautious in not going beyond what her evidence indicated to her." R.A.1038 (Sent. Tr. 45). The judge abused his discretion in making this finding.

"An abuse of discretion exists when the district court . . . 'relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors[.]'" Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008), quoting Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 37 (1st Cir. 2003). The medical examiner's refusal to

testify beyond what the evidence showed was an improper reason to discount her testimony, and casts doubt on the basis of the judge's determination that Dr. Laposata was "not very helpful." R.A.1038 (Sent. Tr. 45).

Not opining beyond what the evidence indicates does not make an expert less helpful. Instead, this is what is required of an expert. Cf. Damon v. Sun Co., Inc., 87 F.3d 1467, 1474 (1st Cir. 1996) ("It is fundamental that expert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion . . . an expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation.") (cleaned up). But the trial judge stated that Dr. Capo-Martinez's testimony was less helpful because was "cautious in not going beyond what her evidence indicated to her." R.A.1038 (Sent. Tr. 45). Though credibility determinations are generally entrusted to the factfinder, "credibility . . . depends not only on the seeming sincerity of witnesses and their demeanor in the courtroom but on more objective criteria" such as the witness's consistency, access to information, and bias or interest. United States v. Oquendo-Rivera, 586 F.3d 63, 67 (1st Cir. 2009).

Both Dr. Laposata and Dr. Capo-Martinez are board-certified forensic pathologists, who were trained and experienced in

determining cause of death.[16] Dr. Bird, on the other hand, is not a forensic pathologist, and is instead an emergency room physician and medical (not forensic) toxicologist.[17] Dr. Bird also relied primarily on unreliable postmortem blood concentrations in forming his opinion that the death was due to fentanyl only. Cf. United States v. Zolot, 968 F. Supp. 2d 411, 420-21 (D. Mass. 2013) ("Given the variability of postmortem blood concentrations, many scientists have counseled caution regarding the use of postmortem blood to determine a patient's cause of death."). The jury properly rejected Dr. Bird's conclusion. The trial judge abused his discretion in disregarding the testimony of two medical examiners in favor of Dr. Bird's opinion, which the jury had clearly rejected, particularly where this determination was made due to the medical examiner's unwillingness to speculate beyond what the evidence established. This error was a continuation of the Court's initial

---

[16] In fact, Dr. Capo-Martinez prepared the death certificate in this case, indicating the cause of death was "acute intoxication due to the combined effects of fentanyl and cocaine." The jury found Carvajal did not distribute cocaine to R.T.

[17] This also raises the potential of implicit bias infecting the trial judge's opinion. Dr. Laposata and Dr. Capo-Martinez are female medical examiners, who are uniquely experienced and qualified to opine on cause of death; Dr. Bird is a male emergency room doctor, without professional qualifications on determining cause of death. Implicit gender bias often results in male professionals being viewed as more qualified than females. Cf. Justin D. Levinson & Danielle Young, Implicit Gender Bias in the Legal Profession: An Empirical Study, 18 Duke J. Gender L. & Pol'y 1, 12-18 (2010).

error in not conducting a <u>Daubert</u> hearing prior to the trial and Dr. Bird's testimony.

In addition, the Court erred in refusing to use the "but for" standard to determine whether it may depart upwards for the death of R.T. In <u>Burrage v. United States</u>, 571 U.S. 204, 219 (2014), the United States Supreme Court determined that to sustain a conviction under 21 U.S.C. § 841(b)(1)(C) for sale of controlled substances resulting in death, the government must prove beyond a reasonable doubt that "but for" the sale of these drugs, the decedent would have lived. This Court declined to determine whether this same standard should be used for a sentencing enhancement pursuant to U.S.S.G. §5K2. <u>Heindenstrom</u>, 946 F.3d at 62. However, in <u>Heindenstrom</u>, the Court noted that the government did not charge the defendant under 21 U.S.C. § 841(b)(1)(C). <u>Id</u>. at 60. Here the government elected to do so, and fashioned a specific verdict form to understand the jury's careful fact finding. Given the way in which the government proceeded, the but-for standard is appropriate here for the justifications cited in <u>Burrage</u>. In any event, the evidence provided to the jury does not establish, even under the preponderance standard, that the fentanyl Carvajal sold was the cause of R.T.'s death – given the high amount of cocaine in his system that the jury found Carvajal did not sell, the impurity of the fentanyl that Carvajal was selling, and the medical

examiner's finding that it was a combination of both drugs that caused R.T.'s death.

**II. THE DISTRICT COURT ABUSED ITS DISCRETION IN WITHHOLDING ANY POINTS FOR ACCEPTANCE OF RESPONSIBILITY, WHERE CARVAJAL ADMITTED TO THE CONDUCT FOR WHICH HE WAS CONVICTED AND ONLY PROCEEDED TO TRIAL TO CHALLENGE THE ALLEGATION THAT HE HAD CAUSED R.T.'S DEATH — CONDUCT OF WHICH HE WAS ACQUITTED.**

### A. STANDARD OF REVIEW

Carvajal argued that he was entitled to credit for acceptance of responsibility, and objected to the Court's failure to grant him the two-level decrease. R.A.1005-07 (Sent. Tr. 12-14). Therefore, he preserved this issue and this Court reviews the District Court's decision for abuse of discretion. <u>United States v. Perry</u>, 49 F.4th 33, 37 (1st Cir. 2022). The District Court's factual findings are accepted absent clear error, questions of law are reviewed *de novo*, and "judgment calls" are reviewed for abuse of discretion. <u>Id</u>. at 38.

### B. CARVAJAL ACCEPTED RESPONSIBILITY BY TRUTHFULLY ADMITTING THE CONDUCT COMPRISING HIS CONVICTIONS.

Section 3E1.1(a) of the Sentencing Guidelines provides that a district court may reduce a defendant's offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. §3E1.1. "To prove acceptance of responsibility, a defendant must truthfully admit or not falsely deny the conduct comprising the conviction, as well as any additional relevant conduct for which he is accountable."

United States v. Garrasteguy, 559 F.3d 34, 38 (1st Cir. 2009). A defendant is only required to admit the offense of conviction. U.S.S.G. §3E1.1(a), comment 1(A); United States v. Cash, 266 F.3d 42, 45 (1st Cir. 2001) ("a court may not require a defendant to accept responsibility for conduct beyond the offense of conviction"). "A denial of acceptance-of-responsibility credit 'for behavior which [the defendant] has continued to deny *and has not been proved against him beyond a reasonable doubt*' violates the Fifth Amendment." United States v. Delacruz, 862 F.3d 163, 177 (2d Cir. 2017) (emphasis in original), quoting United States v. Oliveras, 905 F.2d 623, 631 (2d Cir. 1990).

Here, Carvajal acknowledged the conduct for which he was convicted, and asked the jury to convict him of these offenses and acquit him of those portions of Count 1 for which he was not responsible. There was no other way to resolve this case, as he refused to admit to causing R.T.'s death. The jury agreed. Acceptance of responsibility credit may not be withheld because Carvajal did not admit to something the jury agreed he did not do.

Because Carvajal was convicted only of the only charges he admitted to, the Court erred in refusing to grant him a two-level reduction for acceptance of responsibility. Had these points been granted, Carvajal's adjusted offense level would have been 22, and his correct guideline sentencing range would have been 41 to 51

months. The correctly calculated sentencing guideline range further shows how unreasonable Carvajal's sentence was. The 120 month sentence he received was nearly three times the low end of his correct guideline sentencing range, and nearly 70 months higher than the top end of that range. Because this error impacted his guidelines range and the Court relied on an incorrect guidelines range in sentencing, Carvajal was prejudiced. See <u>Molina-Martinez v. United States</u>, 578 U.S. 189, 201 (2016).

## **CONCLUSION**

Mr. Carvajal respectfully requests that this Court remand the case to the District Court for a new sentencing hearing.

Dated: March 1, 2023          Respectfully submitted,
                              BERNARDITO CARVAJAL
                              By his attorney,

                              /s/ Eduardo Masferrer
                              First Circuit No. 98905
                              B.B.O. #644623

                              Masferrer & Associates, P.C.
                              55 Union St., 4th Floor
                              Boston, MA 02108
                              (617) 531-0135
                              Masferrer@madefenders.com

# CERTIFICATE OF COMPLIANCE

     1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,252 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

     2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a monospaced typeface using Courier New 12 point font, in Microsoft Word 2008.


/s/ Eduardo Masferrer
Attorney for the Appellant
Dated: March 1, 2023

USCA No. 22-1207

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


UNITED STATES,
Appellee

v.

BERNARDITO CARVAJAL, a/k/a Christian Mendez-Acevedo,
Defendant - Appellant


**CERTIFICATE OF SERVICE**

I, Eduardo Masferrer, certify that true copies of the Brief and Record Appendix (three volumes) for the Appellant, Bernardito Carvajal, will be served through the ECF system on or before March 1, 2023, to:

Donald Campbell Lockhart, Stephen W. Hassink & Elysa Q. Wan
U.S. Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210



March 1, 2023                    /s/ Eduardo Masferrer
                                 Eduardo Masferrer
                                 Attorney for the Appellant

# RECORD ADDENDUM

Order regarding Daubert,
(Dkt. 124, Nov. 12, 2021) ................................. Add. 1

Finding regarding acceptance of responsibility ............ Add. 3

Determinations regarding sentencing ....................... Add. 4

Judgment in a Criminal Case
(Dkt. 161, Mar. 17, 2022) ................................. Add. 7

# STATUTORY ADDENDUM

18 U.S.C. § 3553 ......................................... Add. 15

21 U.S.C. § 841 .......................................... Add. 20

U.S.S.G. §3E1.1 .......................................... Add. 30

U.S.S.G. §5K2.0 .......................................... Add. 33

U.S.S.G. §5K2.1 .......................................... Add. 40

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 20-10023-GAO

UNITED STATES OF AMERICA,

v.

BERNARDITO CARVAJAL, a/k/a "Christian Mendez-Acevedo,"
Defendant.

ORDER
November 12, 2021

O'TOOLE, S.D.J.

After hearing, the Court makes the following rulings on the pending motions in limine:

The government's Motion in Limine to Introduce Evidence of Defendant's Prior Drug Dealing with the Victim and Other Drug Customers (dkt. no. 91) is GRANTED, and the defendant's related Motion in Limine to Preclude the Admission of Alleged Prior Drug Sales Pursuant to Federal Rules of Evidence 404(b) and 403 (dkt. no. 97) is DENIED.

The government's Motion in Limine to Allow Victim's Family to Attend Full Trial Proceedings (dkt. no. 92) is GRANTED in part and DENIED in part. Family members who are expected to testify may not be present in the courtroom during opening statements. After opening statements, the decedent's father and grandfather may be present in the courtroom. See 18 U.S.C. § 3771(a)(3). The decedent's girlfriend shall be sequestered from the courtroom until she testifies. See Fed. R. Cr. P. 615.

The defendant's Motion in Limine Regarding the Testimony of An Expert Witness (dkt. no. 99) is DENIED as the defendant's criticisms go to weight, rather than admissibility. The government's related Daubert Motion to Prevent Dr. Arden from Opining that Dr. Bird is

Unqualified to Offer an Opinion on the Cause of Death (dkt. no. 93) is GRANTED to the limited extent that Dr. Arden may not testify concerning Dr. Bird's qualification as an expert. That is a question of law for the Court. However, Dr. Bird's opinions and the reasons for them are subject to criticism by Dr. Arden.

The defendant's Motion in Limine to Exclude Evidence of Alleged Use of Aliases and to Strike Aliases from Documents Shown to Jury (dkt. no. 96) is DENIED for substantially the same reasons articulated by the government in its opposition.

The defendant's Motion in Limine Regarding the Use of 911 Call Recordings (dkt. no. 98) is GRANTED under Rules 401 and 403 of the Federal Rules of Evidence.

The government's sealed Motion for a Protective Order (dkt. no. 103) is GRANTED.

The defendant's Motion in Limine to Preclude the Admission of Testimony Regarding Cell Tower Locations and Request for An Evidentiary Hearing (dkt. no. 105) is DENIED.

The defendant's motion in limine styled as Opposition to the Government's Motion to Introduce Multiple Hearsay Statements into Evidence (dkt. no. 116) is DENIED without prejudice subject to specific objections as the testimony develops at trial.

The defendant's request for juror information prior to trial is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge

1          In such a situation, and I'm in Application Note 2,

2     where a court believes it's appropriate despite the defendant

3     going to trial, "a determination that a defendant has accepted

4     responsibility will be based primarily upon pretrial statements

5     and conduct."  So a strategic decision by defense counsel in

6     the opening to concede points that were at issue at trial is

7     not the same as acceptance of responsibility.  And because that

8     only came at trial at the opening statement, it's also outside

9     of the application notes for when a two-point reduction would

10    be appropriate despite going to trial.

11          For those reasons, Your Honor, we don't believe the

12    two-level reduction is appropriate.

13          THE COURT:  I agree with the government and probation

14    as to this issue.  Just in shorthand, I rely significantly on

15    Section 3E1.1, Application Note 2.

16          Anything else from the defense?

17          MR. MASFERRER:  Judge, no, that's the only issue we

18    take with the calculation.

19          Of course, note our objection to the court's ruling.

20          THE COURT:  So I believe unadjusted the proposed

21    application -- application proposed by the PSR, and that

22    results on the terms of the PSR, it is level 24 and a Category

23    I with a suggested guideline range of 51 to 63 months.

24          So I'll hear you now as to your specific

25    recommendations.  Ms. Wan.

1   criminals of all kinds, of all classes.

2         It's clear to me when I think about it.  I eventually

3   feel horrible because I must recognize that my mother taught me

4   better values, and I feel worse upon seeing that I have failed

5   her.

6         Well, with Your Honor's permission I would like to

7   offer condolences to the family because he was also a friend to

8   me.

9         I want to thank my attorneys and the justice system

10   and Your Honor because thanks to you and this experience in my

11   life, I can assure you that I will be a better person, a better

12   human being to be able to give to my son, if the Lord allows me

13   to, a better education.

14         That's all I wanted to say.

15         THE COURT:  Okay.

16         The principal, although general, guidance that the

17   statutes give us is expressed in Section 3553 of Title 18.  It

18   sets forth considerations to be taken account of in deciding an

19   appropriate sentence in any given case.  The circumstances of

20   the case, the particular facts of the events, the people

21   involved and so on vary from case to case, but the categorical

22   inquiry is similar.  Not all of the factors apply in every case

23   and usually there are some factors that are proper for

24   consideration that are the principal considerations in any

25   given sentence and there are some that don't necessarily apply

1  to the circumstances at hand.

2      The general instruction from the sentencing statute is

3  that the sentence should be appropriate, to consider the nature

4  and circumstances of the offense, to reflect the seriousness of

5  the offense, and to promote respect for the law.  Those are

6  important considerations in this case, as in any drug

7  distribution case.

8      In this category of cases, another very important

9  consideration expressed in the statute is to provide adequate

10  deterrence to criminal conduct.  And that applies both to

11  deterring an individual defendant who's being sentenced from

12  committing further crimes, but it also includes more widely an

13  important instruction, advice, to those other people who would

14  commit crimes or be tempted, to realize what the cost to them

15  may be if they're arrested and convicted.  In drug cases that

16  tends to be a very prominent consideration.

17      The nature and circumstances of these offenses is

18  recognized, sadly, as almost uncontrollable.  We have very

19  strict drug laws.  We impose strict sentences.  And yet we have

20  people who volunteer for the risk, and Mr. Carvajal I think was

21  one of those.  So while it's important to punish Mr. Carvajal

22  for what he has done, it's also very important to emphasize to

23  the broader public the tragedy that is being played out

24  particularly among young people, particularly among people in

25  the lower socioeconomic classes who are bearing the -- and not

1     just the victims like Mr. Tonks, sometimes it's even the

2     perpetrators who get dragged into it and end up spending time

3     in jail, but it's also, as we've heard, family members and

4     others who suffer the consequences.

5         A sentence within the guidelines range is insufficient

6     in this case. The policy statement in the guidelines at 5K2.1

7     instructs that if death resulted, the court may increase the

8     sentence above the authorized guideline range. That is

9     entirely appropriate under these circumstances. There was

10     nothing -- I will say this: It was not an intentional homicide,

11     but it was intentional distribution of homicidal drugs.

12         I think a sentence above the guideline range at the

13     lower end of the range that the government has recommended is

14     appropriate, that is, ten years on each count concurrent.

15         So Mr. Carvajal, if you'd stand, please.

16         Bernardito Carvajal, on your conviction of these

17     offenses and pursuant to the Sentencing Reform Act of 1984, it

18     is the judgment of the court that you be and you are hereby

19     committed to the custody of the Bureau of Prisons to be

20     imprisoned for a term of 120 months. This consists of equal

21     terms on both of the counts of conviction to be served

22     concurrently.

23         Upon your release from imprisonment, you shall be

24     placed on supervised release for a term of three years. This

25     consists of equal terms of three years on each count to be

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| BERNARDITO CARVAJAL | Case Number: 1   20 CR 10023   - 001   - GAO |
| | USM Number: 01700-138 |
| | EDUARDO MASFERRER, ESQUIRE |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   1, 2
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC Sec. 841(a)(1) | Distribution of Fentanyl | 06/12/19 | 1 |
| 21 USC Sec. 841(b) (1)(C) | | | |

The defendant is sentenced as provided in pages 2 through ___8___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/16/2022

Date of Imposition of Judgment

_Signature of Judge_

The Honorable George A. O'Toole Jr.

Judge, U.S. District Court

Name and Title of Judge

3/17/22

Date

Add. 7

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 1A

Judgment—Page   2   of   8

DEFENDANT: BERNARDITO CARVAJAL
CASE NUMBER: **1  20  CR  10023  - 001  - GAO**

## ADDITIONAL COUNTS OF CONVICTION

| <u>Title & Section</u> | <u>Nature of Offense</u> | <u>Offense Ended</u> | <u>Count</u> |
|---|---|---|---|
| 21 USC Sec. 841 (a)(1), 21 USC. Sec 841(b)(1)(C) | Distribution of and Possession with Intent to Distribute Fentanyl | 07/31/19 | 2 |

Add. 8

AO 245B (Rev.02/18)  Judgment in Criminal Case
          Sheet 2 — Imprisonment

| | Judgment — Page | 3 | of | 8 |
|---|---|---|---|---|

DEFENDANT: BERNARDITO CARVAJAL
CASE NUMBER:  1 20 CR 10023  - 001 - GAO

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:    120   month(s)

on each of counts 1 and 2, to run concurrently with each other.

☐  The court makes the following recommendations to the Bureau of Prisons:

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____  ☐  a.m.   ☐  p.m.   on  _____.

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on  _____.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

|  | Judgment—Page | 4 | of | 8 |
|---|---|---|---|---|

DEFENDANT:  BERNARDITO CARVAJAL
CASE NUMBER:  1  20  CR  10023  - 001 - GAO

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :          36   month(s)

on each of counts 1 and 2, to run concurrently with each other.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you
        pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 5 | of | 8 |

DEFENDANT:   BERNARDITO CARVAJAL
CASE NUMBER:   1  20 CR 10023   - 001 - GAO

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____       Date _____

AO 245B(Rev. 02/18)  Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page __6__ of __8__

DEFENDANT: BERNARDITO CARVAJAL
CASE NUMBER: 1  20 CR 10023  - 001 - GAO

## SPECIAL CONDITIONS OF SUPERVISION

Defendant must submit to substance use testing, not to exceed 104 drug tests per year, to determine if he has used a prohibited substance.  Defendant must not attempt to obstruct or tamper with the testing methods.

If ordered deported, the defendant must leave the United States and not return without prior permission of the Secretary of the Department of Homeland Security.

Defendant must use his true name and is prohibited from the use of any false identifying information which includes, but is not limited to, any aliases, false dates of birth, false social security numbers, and incorrect places of birth.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  7  of  8

DEFENDANT:  BERNARDITO CARVAJAL
CASE NUMBER:  1  20 CR 10023  - 001 - GAO

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 200.00 | $ | $ | $ |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $ 0.00 | $ 0.00 | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐   the interest requirement is waived for the   ☐  fine   ☐  restitution.

☐   the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __8__ of __8__

DEFENDANT:  BERNARDITO CARVAJAL
CASE NUMBER:   1  20 CR 10023  - 001 - GAO

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due

  ☐ not later than _____ , or
  ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
  _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
  _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
  term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
  imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☑ Special instructions regarding the payment of criminal monetary penalties:

  The assessment fee is due forthwith.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

  Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

KeyCite Red Flag - Severe Negative Treatment
Unconstitutional or PreemptedRecognized as Unconstitutional by United States v. Henry, 11th Cir.(Ala.), June 21, 2021

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part II. Criminal Procedure
      Chapter 227. Sentences (Refs & Annos)
        Subchapter A. General Provisions (Refs & Annos)

18 U.S.C.A. § 3553

# § 3553. Imposition of a sentence

Effective: December 21, 2018
Currentness

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

  **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

  **(2)** the need for the sentence imposed--

    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)** to afford adequate deterrence to criminal conduct;

    **(C)** to protect the public from further crimes of the defendant; and

    **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  **(3)** the kinds of sentences available;

  **(4)** the kinds of sentence and the sentencing range established for--

    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.--**

**(1) In general.--**Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2) Child crimes and sexual offenses.--**

**(A)** [2] **Sentencing.**--In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless--

**(i)** the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

**(ii)** the court finds that there exists a mitigating circumstance of a kind or to a degree, that--

**(I)** has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

**(II)** has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

**(III)** should result in a sentence different from that described; or

**(iii)** the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c) Statement of reasons for imposing a sentence.**--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--

**(1)** is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera

in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,,[3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence procedure for an order of notice**.--Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall--

**(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

**(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

**(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited authority to impose a sentence below a statutory minimum.**--Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f) Limitation on applicability of statutory minimums in certain cases.**--Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846), section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), or section 70503 or 70506 of title 46, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--

**(1)** the defendant does not have--

**(A)** more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

**(B)** a prior 3-point offense, as determined under the sentencing guidelines; and

**(C)** a prior 2-point violent offense, as determined under the sentencing guidelines;

**(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(3)** the offense did not result in death or serious bodily injury to any person;

**(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

**(g) Definition of violent offense.**--As used in this section, the term "violent offense" means a crime of violence, as defined in section 16, that is punishable by imprisonment.

**CREDIT(S)**

(Added Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1989; amended Pub.L. 99-570, Title I, § 1007(a), Oct. 27, 1986, 100 Stat. 3207-7; Pub.L. 99-646, §§ 8(a), 9(a), 80a(a), 81(a), Nov. 10, 1986, 100 Stat. 3593, 3619; Pub.L. 100-182, §§ 3, 16(a), 17, Dec. 7, 1987, 101 Stat. 1266, 1269, 1270; Pub.L. 100-690, Title VII, § 7102, Nov. 18, 1988, 102 Stat. 4416; Pub.L. 103-322, Title VIII, § 80001(a), Title XXVIII, § 280001, Sept. 13, 1994, 108 Stat. 1985, 2095; Pub.L. 104-294, Title VI, § 601(b)(5), (6), (h), Oct. 11, 1996, 110 Stat. 3499, 3500; Pub.L. 107-273, Div. B, Title IV, § 4002(a)(8), Nov. 2, 2002, 116 Stat. 1807; Pub.L. 108-21, Title IV, § 401(a), (c), (j)(5), Apr. 30, 2003, 117 Stat. 667, 669, 673; Pub.L. 111-174, § 4, May 27, 2010, 124 Stat. 1216; Pub.L. 115-391, Title IV, § 402(a), Dec. 21, 2018, 132 Stat. 5221.)

Footnotes

1      So in original. The period probably should be a semicolon.

2      So in original. No subpar. (B) has been enacted.

3      So in original. The second comma probably should not appear.

18 U.S.C.A. § 3553, 18 USCA § 3553
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or PreemptedPrior Version Held Unconstitutional by U.S. v. Grant, C.D.Cal., Nov. 30, 2007

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

United States Code Annotated
 Title 21. Food and Drugs (Refs & Annos)
  Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)
   Subchapter I. Control and Enforcement
    Part D. Offenses and Penalties

21 U.S.C.A. § 841

## § 841. Prohibited acts A

Effective: December 2, 2022
Currentness

**(a) Unlawful acts**

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

**(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

**(2)** to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**(b) Penalties**

Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

**(1)(A)** In the case of a violation of subsection (a) of this section involving--

 **(i)** 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

 **(ii)** 5 kilograms or more of a mixture or substance containing a detectable amount of--

  **(I)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

  **(II)** cocaine, its salts, optical and geometric isomers, and salts of isomers;

**(III)** ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

**(IV)** any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

**(iii)** 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

**(iv)** 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

**(v)** 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

**(vi)** 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

**(vii)** 1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 1,000 or more marihuana plants regardless of weight; or

**(viii)** 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(B)** In the case of a violation of subsection (a) of this section involving--

Add. 21

**(i)** 100 grams or more of a mixture or substance containing a detectable amount of heroin;

**(ii)** 500 grams or more of a mixture or substance containing a detectable amount of--

**(I)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

**(II)** cocaine, its salts, optical and geometric isomers, and salts of isomers;

**(III)** ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

**(IV)** any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

**(iii)** 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

**(iv)** 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

**(v)** 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

**(vi)** 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

**(vii)** 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 100 or more marihuana plants regardless of weight; or

**(viii)** 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of

Add. 22

at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(C)** In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

**(D)** In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(E)(i)** Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

**(ii)** If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.  4

**(iii)** Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(2)** In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

**(3)** In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

**(4)** Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

**(5)** Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed--

**(A)** the amount authorized in accordance with this section;

**(B)** the amount authorized in accordance with the provisions of Title 18;

**(C)** $500,000 if the defendant is an individual; or

**(D)** $1,000,000 if the defendant is other than an individual;

or both.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**(6)** Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use--

**(A)** creates a serious hazard to humans, wildlife, or domestic animals,

**(B)** degrades or harms the environment or natural resources, or

**(C)** pollutes an aquifer, spring, stream, river, or body of water,

shall be fined in accordance with Title 18 or imprisoned not more than five years, or both.

**(7) Penalties for distribution**

**(A) In general**

Whoever, with intent to commit a crime of violence, as defined in section 16 of Title 18 (including rape), against an individual, violates subsection (a) by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with Title 18.

**(B) Definition**

For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.

**(c) Offenses involving listed chemicals**

Any person who knowingly or intentionally--

**(1)** possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

**(2)** possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

**(3)** with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

Add. 25

**(d) Boobytraps on Federal property; penalties; "boobytrap" defined**

**(1)** Any person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment for not more than 10 years or fined under Title 18, or both.

**(2)** If any person commits such a violation after 1 or more prior convictions for an offense punishable under this subsection, such person shall be sentenced to a term of imprisonment of not more than 20 years or fined under Title 18, or both.

**(3)** For the purposes of this subsection, the term "boobytrap" means any concealed or camouflaged device designed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wires with hooks attached.

**(e) Ten-year injunction as additional penalty**

In addition to any other applicable penalty, any person convicted of a felony violation of this section relating to the receipt, distribution, manufacture, exportation, or importation of a listed chemical may be enjoined from engaging in any transaction involving a listed chemical for not more than ten years.

**(f) Wrongful distribution or possession of listed chemicals**

**(1)** Whoever knowingly distributes a listed chemical in violation of this subchapter (other than in violation of a recordkeeping or reporting requirement of section 830 of this title) shall, except to the extent that paragraph (12), (13), or (14) of section 842(a) of this title applies, be fined under Title 18 or imprisoned not more than 5 years, or both.

**(2)** Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if, after such knowledge is acquired, such person does not take immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

**(g) Internet sales of date rape drugs**

**(1)** Whoever knowingly uses the Internet to distribute a date rape drug to any person, knowing or with reasonable cause to believe that--

**(A)** the drug would be used in the commission of criminal sexual conduct; or

**(B)** the person is not an authorized purchaser;

shall be fined under this subchapter or imprisoned not more than 20 years, or both.

**(2)** As used in this subsection:

**(A)** The term "date rape drug" means--

**(i)** gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma butyrolactone (GBL) or 1,4-butanediol;

**(ii)** ketamine;

**(iii)** flunitrazepam; or

**(iv)** any substance which the Attorney General designates, pursuant to the rulemaking procedures prescribed by section 553 of Title 5, to be used in committing rape or sexual assault.

The Attorney General is authorized to remove any substance from the list of date rape drugs pursuant to the same rulemaking authority.

**(B)** The term "authorized purchaser" means any of the following persons, provided such person has acquired the controlled substance in accordance with this chapter:

**(i)** A person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least 1 medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other heath[1] professionals. The preceding sentence shall not be construed to imply that 1 medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice.

**(ii)** Any practitioner or other registrant who is otherwise authorized by their registration to dispense, procure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter.

**(iii)** A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a prescription is not required.

**(3)** The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4-butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

**(h) Offenses involving dispensing of controlled substances by means of the Internet**

**(1) In general**

It shall be unlawful for any person to knowingly or intentionally--

**(A)** deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

**(B)** aid or abet (as such terms are used in section 2 of Title 18) any activity described in subparagraph (A) that is not authorized by this subchapter.

**(2) Examples**

Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally--

**(A)** delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity as required by section 823(g) of this title (unless exempt from such registration);

**(B)** writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) of this title;

**(C)** serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections[2] 823(g) or 829(e) of this title;

**(D)** offering to fill a prescription for a controlled substance based solely on a consumer's completion of an online medical questionnaire; and

**(E)** making a material false, fictitious, or fraudulent statement or representation in a notification or declaration under subsection (d) or (e), respectively, of section 831 of this title.

**(3) Inapplicability**

**(A)** This subsection does not apply to--

**(i)** the delivery, distribution, or dispensation of controlled substances by nonpractitioners to the extent authorized by their registration under this subchapter;

**(ii)** the placement on the Internet of material that merely advocates the use of a controlled substance or includes pricing information without attempting to propose or facilitate an actual transaction involving a controlled substance; or

Add. 28

**(iii)** except as provided in subparagraph (B), any activity that is limited to--

**(I)** the provision of a telecommunications service, or of an Internet access service or Internet information location tool (as those terms are defined in section 231 of Title 47); or

**(II)** the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication, without selection or alteration of the content of the communication, except that deletion of a particular communication or material made by another person in a manner consistent with section 230(c) of Title 47 shall not constitute such selection or alteration of the content of the communication.

**(B)** The exceptions under subclauses (I) and (II) of subparagraph (A)(iii) shall not apply to a person acting in concert with a person who violates paragraph (1).

**(4) Knowing or intentional violation**

Any person who knowingly or intentionally violates this subsection shall be sentenced in accordance with subsection (b).

**CREDIT(S)**

(Pub.L. 91-513, Title II, § 401, Oct. 27, 1970, 84 Stat. 1260; Pub.L. 95-633, Title II, § 201, Nov. 10, 1978, 92 Stat. 3774; Pub.L. 96-359, § 8(c), Sept. 26, 1980, 94 Stat. 1194; Pub.L. 98-473, Title II, §§ 224(a), 502, 503(b)(1), (2), Oct. 12, 1984, 98 Stat. 2030, 2068, 2070; Pub.L. 99-570, Title I, §§ 1002, 1003(a), 1004(a), 1005(a), 1103, Title XV, § 15005, Oct. 27, 1986, 100 Stat. 3207-2, 3207-5, 3207-6, 3207-11, 3207-192; Pub.L. 100-690, Title VI, §§ 6055, 6254(h), 6452(a), 6470(g), (h), 6479, Nov. 18, 1988, 102 Stat. 4318, 4367, 4371, 4378, 4381; Pub.L. 101-647, Title X, § 1002(e), Title XII, § 1202, Title XXXV, § 3599K, Nov. 29, 1990, 104 Stat. 4828, 4830, 4932; Pub.L. 103-322, Title IX, § 90105(a), (c), Title XVIII, § 180201(b)(2)(A), Sept. 13, 1994, 108 Stat. 1987, 1988, 2047; Pub.L. 104-237, Title II, § 206(a), Title III, § 302(a), Oct. 3, 1996, 110 Stat. 3103, 3105; Pub.L. 104-305, § 2(a), (b)(1), Oct. 13, 1996, 110 Stat. 3807; Pub.L. 105-277, Div. E, § 2(a), Oct. 21, 1998, 112 Stat. 2681-759; Pub.L. 106-172, §§ 3(b)(1), 5(b), 9, Feb. 18, 2000, 114 Stat. 9, 10, 13; Pub.L. 107-273, Div. B, Title III, § 3005(a), Title IV, § 4002(d)(2)(A), Nov. 2, 2002, 116 Stat. 1805, 1809; Pub.L. 109-177, Title VII, §§ 711(f)(1)(B), 732, Mar. 9, 2006, 120 Stat. 262, 270; Pub.L. 109-248, Title II, § 201, July 27, 2006, 120 Stat. 611; Pub.L. 110-425, § 3(e), (f), Oct. 15, 2008, 122 Stat. 4828, 4829; Pub.L. 111-220, §§ 2(a), 4(a), Aug. 3, 2010, 124 Stat. 2372; Pub.L. 115-391, Title IV, § 401(a)(2), Dec. 21, 2018, 132 Stat. 5220; Pub.L. 117-215, Title I, § 103(b)(1)(G), Dec. 2, 2022, 136 Stat. 2263.)

Footnotes

1    So in original. Probably should be "health".

2    So in original. Probably should be "section".

21 U.S.C.A. § 841, 21 USCA § 841
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# PART E — ACCEPTANCE OF RESPONSIBILITY

---

## §3E1.1. Acceptance of Responsibility

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

### Commentary

**Application Notes:**

1.  In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

    (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous;

    (B) voluntary termination or withdrawal from criminal conduct or associations;

    (C) voluntary payment of restitution prior to adjudication of guilt;

    (D) voluntary surrender to authorities promptly after commission of the offense;

    (E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

    (F) voluntary resignation from the office or position held during the commission of the offense;

    (G) post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment); and

    (H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

Add. 30

2.  This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

3.  Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (*see* Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

4.  Conduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply.

5.  The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

6.  Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease in offense level for a defendant at offense level 16 or greater prior to the operation of subsection (a) who both qualifies for a decrease under subsection (a) and who has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps set forth in subsection (b). The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case. For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

    Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. *See* section 401(g)(2)(B) of Public Law 108–21. The government should not withhold such a motion based on interests not identified in §3E1.1, such as whether the defendant agrees to waive his or her right to appeal.

    If the government files such a motion, and the court in deciding whether to grant the motion also determines that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, the court should grant the motion.

**Background:** The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for

his offense by taking, in a timely fashion, the actions listed above (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility.

Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps specified in subsection (b). Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction. Subsection (b) does not apply, however, to a defendant whose offense level is level 15 or lower prior to application of subsection (a). At offense level 15 or lower, the reduction in the guideline range provided by a 2-level decrease in offense level under subsection (a) (which is a greater proportional reduction in the guideline range than at higher offense levels due to the structure of the Sentencing Table) is adequate for the court to take into account the factors set forth in subsection (b) within the applicable guideline range.

Section 401(g) of Public Law 108–21 directly amended subsection (b), Application Note 6 (including adding the first sentence of the second paragraph of that application note), and the Background Commentary, effective April 30, 2003.

| | |
|---|---|
| *Historical Note* | Effective November 1, 1987. Amended effective January 15, 1988 (amendment 46); November 1, 1989 (amendment 258); November 1, 1990 (amendment 351); November 1, 1992 (amendment 459); April 30, 2003 (amendment 649); November 1, 2010 (amendments 746 and 747); November 1, 2013 (amendment 775); November 1, 2018 (amendment 810). |

Add. 32

significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above. The sentencing judge must, however, state the reasons for reducing a sentence under this section. 18 U.S.C. § 3553(c). The court may elect to provide its reasons to the defendant *in camera* and in writing under seal for the safety of the defendant or to avoid disclosure of an ongoing investigation.

| *Historical Note* | Effective November 1, 1987. Amended effective November 1, 1989 (amendment 290). |
|---|---|

## §5K1.2.  Refusal to Assist (Policy Statement)

A defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor.

| *Historical Note* | Effective November 1, 1987. Amended effective November 1, 1989 (amendment 291). |
|---|---|

\*     \*     \*     \*     \*

## 2.   OTHER GROUNDS FOR DEPARTURE

| *Historical Note* | Effective November 1, 1987. Amended effective November 1, 1990 (amendment 358). |
|---|---|

## §5K2.0.  Grounds for Departure (Policy Statement)

(a)   UPWARD DEPARTURES IN GENERAL AND DOWNWARD DEPARTURES IN CRIMINAL CASES OTHER THAN CHILD CRIMES AND SEXUAL OFFENSES.—

(1)   IN GENERAL.—The sentencing court may depart from the applicable guideline range if—

(A)   in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance; or

(B)   in the case of child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), that there exists an aggravating circumstance,

Add. 33

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

(2) DEPARTURES BASED ON CIRCUMSTANCES OF A KIND NOT ADEQUATELY TAKEN INTO CONSIDERATION.—

(A) IDENTIFIED CIRCUMSTANCES.—This subpart (Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)) identifies some of the circumstances that the Commission may have not adequately taken into consideration in determining the applicable guideline range (*e.g.*, as a specific offense characteristic or other adjustment). If any such circumstance is present in the case and has not adequately been taken into consideration in determining the applicable guideline range, a departure consistent with 18 U.S.C. § 3553(b) and the provisions of this subpart may be warranted.

(B) UNIDENTIFIED CIRCUMSTANCES.—A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

(3) DEPARTURES BASED ON CIRCUMSTANCES PRESENT TO A DEGREE NOT ADEQUATELY TAKEN INTO CONSIDERATION.—A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense.

(4) DEPARTURES BASED ON NOT ORDINARILY RELEVANT OFFENDER CHARACTERISTICS AND OTHER CIRCUMSTANCES.—An offender characteristic or other circumstance identified in Chapter Five, Part H (Offender Characteristics) or elsewhere in the guidelines as not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.

(b) DOWNWARD DEPARTURES IN CHILD CRIMES AND SEXUAL OFFENSES.—Under 18 U.S.C. § 3553(b)(2)(A)(ii), the sentencing court may impose a sentence below the range established by the applicable guidelines only if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that—

Add. 34

(1) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States Code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress;

(2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(3) should result in a sentence different from that described.

The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

(c) LIMITATION ON DEPARTURES BASED ON MULTIPLE CIRCUMSTANCES.—The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if—

(1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and

(2) each such offender characteristic or other circumstance is—

(A) present to a substantial degree; and

(B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

(d) PROHIBITED DEPARTURES.—Notwithstanding subsections (a) and (b) of this policy statement, or any other provision in the guidelines, the court may not depart from the applicable guideline range based on any of the following circumstances:

(1) Any circumstance specifically prohibited as a ground for departure in §§5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status), 5H1.12 (Lack of Guidance as a Youth and Similar Cir-

Add. 35

cumstances), the last sentence of 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction), and the last sentence of 5K2.12 (Coercion and Duress).

(2) The defendant's acceptance of responsibility for the offense, which may be taken into account only under §3E1.1 (Acceptance of Responsibility).

(3) The defendant's aggravating or mitigating role in the offense, which may be taken into account only under §3B1.1 (Aggravating Role) or §3B1.2 (Mitigating Role), respectively.

(4) The defendant's decision, in and of itself, to plead guilty to the offense or to enter a plea agreement with respect to the offense (*i.e.*, a departure may not be based merely on the fact that the defendant decided to plead guilty or to enter into a plea agreement, but a departure may be based on justifiable, non-prohibited reasons as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court. *See* §6B1.2 (Standards for Acceptance of Plea Agreement).

(5) The defendant's fulfillment of restitution obligations only to the extent required by law including the guidelines (*i.e.*, a departure may not be based on unexceptional efforts to remedy the harm caused by the offense).

(6) Any other circumstance specifically prohibited as a ground for departure in the guidelines.

(e) REQUIREMENT OF SPECIFIC WRITTEN REASONS FOR DEPARTURE.—If the court departs from the applicable guideline range, it shall state, pursuant to 18 U.S.C. § 3553(c), its specific reasons for departure in open court at the time of sentencing and, with limited exception in the case of statements received *in camera*, shall state those reasons with specificity in the statement of reasons form.

**Commentary**

**Application Notes:**

1. **Definitions.**—For purposes of this policy statement:

"*Circumstance*" includes, as appropriate, an offender characteristic or any other offense factor.

"*Depart*", "*departure*", "*downward departure*", and "*upward departure*" have the meaning given those terms in Application Note 1 of the Commentary to §1B1.1 (Application Instructions).

2.   **Scope of this Policy Statement.—**

(A)   **Departures Covered by this Policy Statement.—**This policy statement covers departures from the applicable guideline range based on offense characteristics or offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining that range. *See* 18 U.S.C. § 3553(b).

Subsection (a) of this policy statement applies to upward departures in all cases covered by the guidelines and to downward departures in all such cases except for downward departures in child crimes and sexual offenses.

Subsection (b) of this policy statement applies only to downward departures in child crimes and sexual offenses.

(B)   **Departures Covered by Other Guidelines.—**This policy statement does not cover the following departures, which are addressed elsewhere in the guidelines: (i) departures based on the defendant's criminal history (*see* Chapter Four (Criminal History and Criminal Livelihood), particularly §4A1.3 (Departures Based on Inadequacy of Criminal History Category)); (ii) departures based on the defendant's substantial assistance to the authorities (*see* §5K1.1 (Substantial Assistance to Authorities)); and (iii) departures based on early disposition programs (*see* §5K3.1 (Early Disposition Programs)).

3.   **Kinds and Expected Frequency of Departures under Subsection (a).—**As set forth in subsection (a), there generally are two kinds of departures from the guidelines based on offense characteristics and/or offender characteristics: (A) departures based on circumstances of a kind not adequately taken into consideration in the guidelines; and (B) departures based on circumstances that are present to a degree not adequately taken into consideration in the guidelines.

(A)   **Departures Based on Circumstances of a Kind Not Adequately Taken into Account in Guidelines.—**Subsection (a)(2) authorizes the court to depart if there exists an aggravating or a mitigating circumstance in a case under 18 U.S.C. § 3553(b)(1), or an aggravating circumstance in a case under 18 U.S.C. § 3553(b)(2)(A)(i), of a kind not adequately taken into consideration in the guidelines.

(i)   **Identified Circumstances.—**This subpart (Chapter Five, Part K, Subpart 2) identifies several circumstances that the Commission may have not adequately taken into consideration in setting the offense level for certain cases. Offense guidelines in Chapter Two (Offense Conduct) and adjustments in Chapter Three (Adjustments) sometimes identify circumstances the Commission may have not adequately taken into consideration in setting the offense level for offenses covered by those guidelines. If the offense guideline in Chapter Two or an adjustment in Chapter Three does not adequately take that circumstance into consideration in setting the offense level for the offense, and only to the extent not adequately taken into consideration, a departure based on that circumstance may be warranted.

(ii)   **Unidentified Circumstances.—**A case may involve circumstances, in addition to those identified by the guidelines, that have not adequately been taken into consideration by the Commission, and the presence of any such circumstance may warrant departure from the guidelines in that case. However, inasmuch as the Commission has continued to monitor and refine the guidelines since their inception to take into consideration relevant circumstances in sentencing, it is expected that departures based on such unidentified circumstances will occur rarely and only in exceptional cases.

Add. 37

(B) **Departures Based on Circumstances Present to a Degree Not Adequately Taken into Consideration in Guidelines.**—

   (i)   **In General.**—Subsection (a)(3) authorizes the court to depart if there exists an aggravating or a mitigating circumstance in a case under 18 U.S.C. § 3553(b)(1), or an aggravating circumstance in a case under 18 U.S.C. § 3553(b)(2)(A)(i), to a degree not adequately taken into consideration in the guidelines. However, inasmuch as the Commission has continued to monitor and refine the guidelines since their inception to determine the most appropriate weight to be accorded the mitigating and aggravating circumstances specified in the guidelines, it is expected that departures based on the weight accorded to any such circumstance will occur rarely and only in exceptional cases.

   (ii)  **Examples.**—As set forth in subsection (a)(3), if the applicable offense guideline and adjustments take into consideration a circumstance identified in this subpart, departure is warranted only if the circumstance is present to a degree substantially in excess of that which ordinarily is involved in the offense. Accordingly, a departure pursuant to §5K2.7 for the disruption of a governmental function would have to be substantial to warrant departure from the guidelines when the applicable offense guideline is bribery or obstruction of justice. When the guideline covering the mailing of injurious articles is applicable, however, and the offense caused disruption of a governmental function, departure from the applicable guideline range more readily would be appropriate. Similarly, physical injury would not warrant departure from the guidelines when the robbery offense guideline is applicable because the robbery guideline includes a specific adjustment based on the extent of any injury. However, because the robbery guideline does not deal with injury to more than one victim, departure may be warranted if several persons were injured.

(C) **Departures Based on Circumstances Identified as Not Ordinarily Relevant.**—Because certain circumstances are specified in the guidelines as not ordinarily relevant to sentencing (*see, e.g.*, Chapter Five, Part H (Specific Offender Characteristics)), a departure based on any one of such circumstances should occur only in exceptional cases, and only if the circumstance is present in the case to an exceptional degree. If two or more of such circumstances each is present in the case to a substantial degree, however, and taken together make the case an exceptional one, the court may consider whether a departure would be warranted pursuant to subsection (c). Departures based on a combination of not ordinarily relevant circumstances that are present to a substantial degree should occur extremely rarely and only in exceptional cases.

   In addition, as required by subsection (e), each circumstance forming the basis for a departure described in this subdivision shall be stated with specificity in the statement of reasons form.

4.  **Downward Departures in Child Crimes and Sexual Offenses.**—

(A) **Definition.**—For purposes of this policy statement, the term "***child crimes and sexual offenses***" means offenses under any of the following: 18 U.S.C. § 1201 (involving a minor victim), 18 U.S.C. § 1591, or chapter 71, 109A, 110, or 117 of title 18, United States Code.

(B) **Standard for Departure.**—

   (i)   **Requirement of Affirmative and Specific Identification of Departure Ground.**—The standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures under this policy statement in

Add. 38

that it includes a requirement, set forth in 18 U.S.C. § 3553(b)(2)(A)(ii)(I) and subsection (b)(1) of this guideline, that any mitigating circumstance that forms the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure in this part (*i.e.*, Chapter Five, Part K).

(ii) **Application of Subsection (b)(2).**—The commentary in Application Note 3 of this policy statement, except for the commentary in Application Note 3(A)(ii) relating to unidentified circumstances, shall apply to the court's determination of whether a case meets the requirement, set forth in subsection 18 U.S.C. § 3553(b)(2)(A)(ii)(II) and subsection (b)(2) of this policy statement, that the mitigating circumstance forming the basis for a downward departure in child crimes and sexual offenses be of kind, or to a degree, not adequately taken into consideration by the Commission.

5. **Departures Based on Plea Agreements.**—Subsection (d)(4) prohibits a downward departure based only on the defendant's decision, in and of itself, to plead guilty to the offense or to enter a plea agreement with respect to the offense. Even though a departure may not be based merely on the fact that the defendant agreed to plead guilty or enter a plea agreement, a departure may be based on justifiable, non-prohibited reasons for departure as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court. *See* §6B1.2 (Standards for Acceptance of Plea Agreements). In cases in which the court departs based on such reasons as set forth in the plea agreement, the court must state the reasons for departure with specificity in the statement of reasons form, as required by subsection (e).

**Background:** This policy statement sets forth the standards for departing from the applicable guideline range based on offense and offender characteristics of a kind, or to a degree, not adequately considered by the Commission. Circumstances the Commission has determined are not ordinarily relevant to determining whether a departure is warranted or are prohibited as bases for departure are addressed in Chapter Five, Part H (Offender Characteristics) and in this policy statement. Other departures, such as those based on the defendant's criminal history, the defendant's substantial assistance to authorities, and early disposition programs, are addressed elsewhere in the guidelines.

As acknowledged by Congress in the Sentencing Reform Act and by the Commission when the first set of guidelines was promulgated, "it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." (*See* Chapter One, Part A). Departures, therefore, perform an integral function in the sentencing guideline system. Departures permit courts to impose an appropriate sentence in the exceptional case in which mechanical application of the guidelines would fail to achieve the statutory purposes and goals of sentencing. Departures also help maintain "sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." 28 U.S.C. § 991(b)(1)(B). By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, along with appellate cases reviewing these departures, the Commission can further refine the guidelines to specify more precisely when departures should and should not be permitted.

As reaffirmed in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the "PROTECT Act", Public Law 108–21), circumstances warranting departure should be rare. Departures were never intended to permit sentencing courts to substitute their policy judgments for those of Congress and the Sentencing Commission. Departure in such circumstances would produce unwarranted sentencing disparity, which the Sentencing Reform Act was designed to avoid.

Add. 39

In order for appellate courts to fulfill their statutory duties under 18 U.S.C. § 3742 and for the Commission to fulfill its ongoing responsibility to refine the guidelines in light of information it receives on departures, it is essential that sentencing courts state with specificity the reasons for departure, as required by the PROTECT Act.

This policy statement, including its commentary, was substantially revised, effective October 27, 2003, in response to directives contained in the PROTECT Act, particularly the directive in section 401(m) of that Act to—

"(1) review the grounds of downward departure that are authorized by the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission; and
(2) promulgate, pursuant to section 994 of title 28, United States Code—
(A) appropriate amendments to the sentencing guidelines, policy statements, and official commentary to ensure that the incidence of downward departures is substantially reduced;
(B) a policy statement authorizing a departure pursuant to an early disposition program; and
(C) any other conforming amendments to the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission necessitated by the Act, including a revision of . . . section 5K2.0".

The substantial revision of this policy statement in response to the PROTECT Act was intended to refine the standards applicable to departures while giving due regard for concepts, such as the "heartland", that have evolved in departure jurisprudence over time.

Section 401(b)(1) of the PROTECT Act directly amended this policy statement to add subsection (b), effective April 30, 2003.

| | |
|---|---|
| *Historical Note* | Effective November 1, 1987. Amended effective June 15, 1988 (amendment 57); November 1, 1990 (amendment 358); November 1, 1994 (amendment 508); November 1, 1997 (amendment 561); November 1, 1998 (amendment 585); April 30, 2003 (amendment 649); October 27, 2003 (amendment 651); November 1, 2008 (amendment 725); November 1, 2010 (amendment 739); November 1, 2011 (amendment 757); November 1, 2012 (amendment 770). |

## §5K2.1.   Death (Policy Statement)

If death resulted, the court may increase the sentence above the authorized guideline range.

Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of

Add. 40

personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

| *Historical Note* | Effective November 1, 1987. |
|---|---|

## §5K2.2.    Physical Injury (Policy Statement)

If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in §5K2.1.

| *Historical Note* | Effective November 1, 1987. |
|---|---|

## §5K2.3.    Extreme Psychological Injury (Policy Statement)

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

| *Historical Note* | Effective November 1, 1987. |
|---|---|

Add. 41